## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 22-11179 |
| | § | |
| TOMMY NGO, | § | CHAPTER 7 |
| | § | |
| DEBTOR. | § | SECTION A |
| | § | |
| | § | |
| CARROLLTON & OAK, LLC, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADV. NO. 23-1012 |
| | § | |
| TOMMY NGO, | § | |
| | § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following matters in the above-captioned lead bankruptcy case and adversary proceeding:

1. *Plaintiff's Motion To Compel Answers to Discovery Requests and for Other Relief*, [Adv. No. 23-1012, ECF Doc. 48], filed on behalf of Carrollton & Oak, LLC ("C&O");

   a. *Opposition to Motion To Compel Discovery Responses*, [Adv. No. 23-1012, ECF Doc. 53], filed on behalf of Tommy Ngo ("Ngo");

   b. *Affidavit in Support of Sanctions Request*, sworn to by William E. Steffes on February 21, 2024 (the "Steffes Affidavit"), [Adv. No. 23-1012, ECF Doc. 61], filed on behalf of C&O; and

   c. *Opposition to Sanctions on Written Discovery Responses*, [Adv. No. 23-1012, ECF Doc. 76], filed on behalf of Ngo.

2. *Carrollton & Oak's Motion for Sanctions*, as supplemented, [No. 22-11179, ECF Doc. 175 & 242]; and

   a. *Opposition to C&O Motion for Sanctions*, [No. 22-11179, ECF Doc. 199], filed on behalf of Ngo.

3. *Carrollton & Oak's Motion for Sanctions Under Rule 9011 Related to the Motion* In Limine, [Adv. No. 23-1012, ECF Doc. 55].

4. *Carrollton & Oak's Motion for Sanctions Under Rule 9011 Related to Motion for Finding of Spoliation of Evidence by C&O*, [Adv. No. 23-1012, ECF Doc. 56]; and

   a. Affidavit in Support of Sanctions Request, sworn to by William E. Steffes on March 13, 2024 (the "Second Steffes Affdavit"), [No. 22-11179. ECF Doc. 253; Adv. No. 23-1012, ECF Doc. 99].

5. *Carrollton & Oak's Motion and Incorporated Memorandum for Sanctions Under Rule 9011 Related to Omnibus FRCP 60(b) Motion To Reconsider*, [Adv No. 23-1012; ECF Doc. 130];

   a. *Supplemental Memorandum in Support of Ngo's Omnibus Motion for Reconsideration and Opposition to Sanctions: "The Phoenix Brief"*, [Adv. No. 23-1012, ECF Doc. 132], filed on behalf of Ngo; and

   b. *Affidavit in Support of Sanctions Request*, sworn to by William E. Steffes on January 29, 2025 (the "Third Steffes Affidavit"), [Adv. No. 23-1012, ECF Doc. 164], filed on behalf of C&O.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334.  The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A).  The venue of the chapter 13 case is proper under 28 U.S.C. § 1408.

## I.  BACKGROUND

### A.   Enforcement of C&O's Judgment Leads to Ngo's Chapter 13 Bankruptcy Case, Subsequently Converted to Chapter 7.

On May 23, 2022, after a six-day trial between March 30 and April 12, 2022, a Louisiana state court in Orleans Parish granted C&O's motion for an involuntary dismissal and issued a judgment against Ngo and in favor of C&O in the principal amount of $6,455,889.19 (the "State Court Judgment"), accompanied by written reasons.  [No. 22-11179, ECF Doc. 87, Exs. 1 & 5]. The trial revolved around C&O's lease-with-purchase-option of a property owned by Ngo and

located at 1200 South Carrollton Avenue, New Orleans, Louisiana (the "Lease"); the state court was called upon to decide, among other claims and counterclaims, whether C&O had exercised its option to purchase the property under the Lease and to assess damages owed by each party. After the fourth day of the trial, counsel for Ngo moved for an involuntary dismissal of the case, which the state court denied; counsel also requested a stay of further proceedings pending appeal and the state court denied that request. *See id.* On the fifth day of the trial, C&O moved for an involuntary dismissal of the case, which the state court granted, finding that C&O had established *prima facie* evidence that it had not exercised its purchase option under the Lease. *See id.* On the last day of trial, the state court asked the parties for testimony and argument related to the issue of damages, but Ngo's counsel elected not to pursue damages.[1]

In September 2022, C&O initiated foreclosure proceedings to enforce its State Court Judgment. At this juncture, the Court finds it relevant to observe that Justin Zitler, who represents Ngo in this chapter 7 proceeding, did not represent Ngo at trial in the state court action, [No. 22-11179, ECF Doc. 87, Ex. 3], but appeared to start his representation of Ngo at the time C&O began exercising its state law rights to enforce the State Court Judgment.[2] Zitler

---

[1]    Although C&O named other defendants in its state court action, the state court found Ngo specifically liable to C&O for damages related to short-term rental loss of income, renovations and costs to repair property located at 1200 South Carrollton Avenue, New Orleans, Louisiana, as well as commercial and residential loss of income and past due utility bills for that property. [No. 22-11179, ECF Doc. 77; ECF Doc. 87, Exs. 1 & 5]. The State Court Judgment also states that "Defendant, Tommy Ngo, **WAIVES** his right to damages as expressly stated and confirmed on the record by Counsel for Defendant, Attorneys Connie P. Trieu and Zachary T. LaMachio on April 12, 2022." [No. 22-11179, ECF Doc. 87-1].

[2]    At a September 30, 2022, hearing, the issuing court of the State Court Judgment stated unequivocally:

> [F]irst, I just want to clarify that we had one trial. There were not two trials on this . . . [O]ne item I want the record to be clear, Mr. Zitler didn't have anything to do with this trial. And there have been a lot of statements made by someone who was not present and was not part of this trial even when we had hearings before the trial started about our

3

sought a preliminary injunction in Jefferson Parish state court to stop foreclosure proceedings, arguing that the State Court Judgment was not a final judgment. Zitler asserted that the Orleans Parish state court bifurcated the trial on the merits of the parties' disputes between liability and damages and thus the State Court Judgment is an interlocutory order under review by a Louisiana appellate court pursuant to the supervisory writ he had filed. [No. 22-11179, ECF Doc. 87, Ex. 2].[3] The Jefferson Parish state court reviewed the State Court Judgment, found it to be a final judgment, recognized that Ngo's supervisory writ did not stay enforcement of the State Court Judgment, and denied Ngo's request for a preliminary injunction. [No. 22-11179, ECF Doc. 87, Ex. 2]. C&O then went back to Orleans Parish state court, where that court granted C&O's emergency motion to clarify the State Court Judgment. On September 30, 2022, the state court ruled unequivocally:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Judgment signed on May 23, 2022, regarding the trial on the merits of the above-captioned and numbered proceeding, is a **FINAL JUDGMENT** in accordance with Louisiana Code of Civil Procedure Articles 1911 and 1915.
>
> . . . .
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that no parties to this litigation or their Counsel of Record, consented to or made any motion or agreement to bifurcate. The issue of bifurcation of liability and damages was not before the Court.
>
> . . . .
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court **CLARIFIES** that the term "bifurcate," at issue, was used in the Reasons for Judgment signed on May 23, 2022, and not the final Judgement rendered to Plaintiff, Carrollton & Oak, LLC. This Court finds no further clarification is

---

trial, how we were going to proceed with Ms. Trieu and Ms. Allison Johnson. Mr. Zitler was never here.

[No. 22-11179, ECF Doc. 87, Ex. 3].

[3]     Under Louisiana law, a supervisory writ is the vehicle to challenge an interlocutory ruling and an appeal is the proper mechanism for review of a final judgment.

needed as the final Judgment is the **BINDING LEGAL AUTHORITY** for the merits of this proceeding in accordance with Louisiana Code of Civil Procedure Article 1911 and 1915.

*See id.*

On October 4, 2022, attorney Armando Baralt, filed a petition for bankruptcy relief under chapter 13 of the Bankruptcy Code on behalf of Ngo. [No. 22-11179, ECF Doc. 1]. But he filed no proposed plan of reorganization or Schedules, resulting in the chapter 13 trustee's filing of a motion to dismiss Ngo's case on October 20, 2022. [No. 22-11179, ECF Doc. 10]. A day later, C&O filed a motion to convert Ngo's case to one under chapter 7 of the Bankruptcy Code, stating that Ngo did not qualify as a chapter 13 debtor under § 109(e) of the Bankruptcy Code because his non-contingent liabilities exceeded the statutory debt limit. [No. 22-11179, ECF Doc. 11]. This Court issued an Order setting an evidentiary hearing on December 8, 2022, to resolve the two motions. [No. 22-11179, ECF Doc. 19]. In the meantime, C&O filed a proof of claim against Ngo's estate, attaching as an exhibit the State Court Judgment and asserting a claim for $6,455,889.19, secured by "[a]ll immovable property and improvements thereon owned or in the name of the Debtor in Orleans and Jefferson Parish." Proof of Claim No. 2.

After a last-minute request from Ngo's counsel to continue the December 8 evidentiary hearing, [No. 22-11179, ECF Doc. 21], the Court rescheduled the evidentiary hearing to January 10, 2023, [No. 22-11179, ECF Doc. 22]. On January 3, Baralt and purported co-counsel, Zitler, filed a witness and exhibit list into the record on behalf of Ngo. [No. 22-11179, ECF Doc. 27].[4]

---

[4]    Attached to Ngo's Petition is the *Disclosure of Compensation of Attorney for Debtor* filed by Baralt pursuant to this Court's General Order 2020-8 governing presumptive fees in chapter 13 cases. [No. 22-11179, ECF Doc. 1]. Baralt checked the box in Paragraph 4 of the disclosure form stating that "I have agreed to share the above-disclosed compensation with another person or persons who are not members or associate of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached." *Id.* Baralt did not attach the agreement or list the names of the people sharing in his compensation for representing Ngo in the chapter 13 case. If Ngo's case had

On January 9, 2023, Zitler's paralegal notified chambers and opposing counsel that Zitler had been hospitalized and requested an emergency continuance of the evidentiary hearing; no communications were received from Baralt. Thus, the Court *sua sponte* issued an order continuing the January 10 evidentiary hearing to February 7, 2023. [No. 22-11179, ECF Doc. 28].

On February 6, 2023, Ngo and C&O entered into a stipulation that resolved the chapter 13 trustee's motion and C&O's motion to convert the case to chapter 7. [No. 22-11179, ECF Doc. 33]. That stipulation included the following agreement:

> B.     The Debtor hereby agrees that conversion of this case to Chapter 7 is in the best interest of creditors and the estate and consents to immediate conversion of this case to Chapter 7.

> C.     Creditor hereby agrees that it will not file any opposition to a future motion that may be filed by the Debtor for limited relief from automatic stay under 11 U.S.C. § 362 to permit the Louisiana 4th Circuit Court of Appeal to issue its decision on a pending writ application in Case No. 2022-C-0522. This limited relief does not apply to any other writ application that may now be pending nor to any future writ applications or appeals.

*Id.* The Court approved the stipulation of the parties and converted Ngo's case to one under chapter 7; the Office of the United States Trustee appointed a chapter 7 trustee to administer the case. [No. 22-11179, ECF Doc. 34].

---

remained in chapter 13, Baralt's ambiguous fee-sharing admission and the fact that Zitler had not been approved by this Court to serve as a professional of the estate under 11 U.S.C. § 327(a) would have presented an issue; however, this Court converted Ngo's case to one under chapter 7 on February 7, 2023. Under § 330(a)(1) of the Bankruptcy Code, a chapter 7 attorney has no right to compensation from estate funds unless she is employed by the chapter 7 trustee under § 327 of the Bankruptcy Code. *See* 11 U.S.C. § 330(a)(1); *Lamie v. United States Trustee*, 540 U.S. 526 (2004); *In re Dunson*, 550 B.R. 537, 545 (Bankr. D. Kan. 2016).

On June 14, 2023, Baralt moved this Court to withdraw as counsel for Ngo, stating that Zitler "has been counsel for Debtor from the start and prior to the commencement of this [bankruptcy] case" and that "Baralt was brought in to serve as co-counsel for purposes of filing this [bankruptcy] case." [No. 22-11179, ECF Doc. 117]. The Court granted that motion. [No. 22-11179, ECF Doc. 120].

**B.     The Court Allows C&O's Secured Claim in the Principal Amount of $6,455,889.19 Against Ngo's Estate.**

On February 23, 2023, Baralt filed into the record Ngo's sworn Schedules and tax records.  [No. 22-11179, ECF Docs. 40–54].  On Schedule E/F, Ngo listed C&O as holding a contingent, unliquidated, and disputed general unsecured claim in the amount of $6,455,889.19 and noted that it was subject to a "Writ/devolutive appeal on liability, pending in State of Louisiana, 4th Circuit."  [No. 22-11179, ECF Doc. 45].  After filing two procedurally deficient objections to C&O's proof of claim, [No. 22-11179, ECF Docs. 73 & 75], on April 11, 2023, Zitler filed an objection to C&O's proof of claim on behalf of Ngo, [No. 22-11179, ECF Doc. 77], asserting that (1) the damages awarded to C&O in the State Court Judgment are identical to damages subject to a consent judgment entered by this Court in another debtor's case pending before this Court[5] and (2) the amounts claimed by C&O against the Ngo estate pursuant to the State Court Judgment may be offset by amounts allegedly owed to Ngo under a "promissory

---

[5]     This Court also presided over the chapter 7 bankruptcy case of Gerard McGovern.  [No. 21-10064 (filed Jan. 14, 2022)].  As reflected in the record of McGovern's bankruptcy case, at one time, McGovern held 50% ownership interest in C&O and his business partner, Nidel Jaber, held the remaining 50%.  In April 2014, C&O entered into the Lease with Ngo.  The subject property, 1200 South Carrollton, hosted eight commercial and residential tenants.  After McGovern filed a bankruptcy petition, C&O initiated an adversary proceeding against him, seeking a declaration that the debt owed by McGovern to C&O is nondischargeable.  [Adv. No. 22-1004, ECF Doc. 1].  C&O asserted that the basis for the debt owed to it by McGovern stemmed from his mismanagement and waste of the property while Jaber was out of the country for an extended amount of time, as well as fraud, embezzlement, and commingling of proceeds emanating from the property.  *See id*.  C&O's nondischargeability adversary proceeding also alleged that McGovern's actions and inaction put C&O at risk of suit from Ngo for non-payment of amounts due under the Lease and that McGovern illegally attempted to remove Jaber as a member of C&O.  *See id*.

On November 22, 2022, this Court approved a consent judgment between C&O and McGovern that recognized that McGovern owed a debt in the amount of $1.2 million to C&O and that, under 11 U.S.C. §§ 523(a)(4) and (a)(6), the debt would be excepted from any discharge that McGovern received through his bankruptcy case.  [Adv. No. 22-1004, ECF Doc. 35].  The Court observes that the settlement between C&O and McGovern represented a settlement of the nondischargeability action—an action that does not exist outside of a bankruptcy proceeding—and has no bearing on the State Court Judgment already received prepetition by C&O for claims asserted against Ngo.

note."[6] Zitler's argument parroted the arguments made to the Louisiana state court in Jefferson Parish—that the issuing Louisiana state court bifurcated its ruling into two judgments, one on liability and the other on damages. C&O opposed Ngo's claim objection, [No. 22-11179, ECF Doc. 87], and Zitler filed a reply brief on behalf of Ngo, [No. 22-11179, ECF Doc. 90]. For the reasons stated on the record during a May 17, 2023 hearing, with particular reliance on the State Court Judgment and written reasons, this Court overruled Ngo's objection to C&O's proof of claim and allowed C&O a secured claim in the full amount listed on its proof of claim. [No. 22-11179, ECF Doc. 98]

On May 12, 2023, Zitler filed a motion to lift the stay as contemplated by the parties' February 6, 2023 stipulation. [No. 22-11179, ECF Doc. 88]. After considering the responses filed by the parties, [No. 22-11179, ECF Docs. 106 & 107], and after a hearing on the matter, on June 9, 2023, the Court granted that motion and modified the stay *solely* to permit the Louisiana appellate court to rule on a pending writ application in the case identified in the parties' stipulation. [No. 22-11179, ECF Doc. 116].[7]

On June 1, 2023, Zitler filed a *Notice of Appeal* on behalf of Ngo, appealing this Court's Order overruling of Ngo's objection to C&O's proof of claim and allowing C&O a secured claim against the estate. [ECF Doc. 109]. On June 16, 2023, Zitler filed a notice designating the record and identifying issues to be presented on appeal. [No. 22-11179, ECF Doc. 119]. On June 26, 2023, C&O as appellee filed a motion to strike items designated by Zitler for inclusion

---

[6] Zitler views a document he refers to as the "promissory note" executed contemporaneously and in connection with Lease as a separate transaction as one that would give his client an independent basis for recovery from C&O. [No. 22-11179, ECF Docs. 77 & 87 & exhibits; Adv. No. 23-1012, ECF Doc. 26].

[7] On June 26, 2023, the Louisiana Fourth Circuit Court of Appeal issued an Order in response to this Court's June 9, 2023 Order. The appellate court noted that the State Court Judgment was designated as a final by the trial court and remanded Ngo's writ to the trial court for treatment of the writ as a motion for appeal.

in the record on appeal; specifically, C&O objected to inclusion of pleadings and orders from the McGovern bankruptcy, *see supra* note 5, the bankruptcy cases of certain of McGovern's affiliates, as well as record documents from the case litigated in Louisiana state court.  [No. 22-11179, ECF Doc. 125].  Zitler filed no opposition to C&O's motion on behalf of Ngo and the Court granted the relief sought in the motion.  [No. 22-11179, ECF Doc. 132].  On July 17, 2023, the District Court presiding over Ngo's appeal issued an Order granting Ngo's voluntary dismissal of the appeal and assessing costs to Ngo.  [No. 22-11179, ECF Doc. 135].  At that point, this Court's Order overruling Ngo's claim objection and allowing C&O's secured claim in the principal amount of $6,455,889.19 became final (the "Claim Allowance Order").  [No. 22-11179, ECF Doc. 98].

### C. Zitler Files Vexatious Pleadings in C&O's Nondischargeability Adversary Proceeding Against Ngo.

On May 19, 2023, C&O initiated an adversary proceeding against Ngo, asserting that the debt owed by Ngo to C&O should be nondischargeable under § 523(a)(6) of the Bankruptcy Code, which provides that debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" will be excepted from any discharge obtained by Ngo under § 727 of the Bankruptcy Code (the "Nondischargeability Adversary").  [Adv. No. 23-1012, ECF Doc. 1].  On July 14, 2023, Zitler filed an Answer on behalf of Ngo, and on September 2, 2023, amended the Answer with leave of Court.  [Adv. No. 23-1012, ECF Docs. 8 & 14].

*1. Zitler's motion for leave to assert a counterclaim and third-party claim*

The Court issued a Scheduling Order on September 16, 2023, setting a two-day trial beginning March 25, 2024.  [Adv. No. 23-1012, ECF Doc. 16].  A month later, Zitler sought leave on behalf of Ngo to file a counterclaim and third-party claim against C&O and Jaber (the "Counterclaim Motion").  [Adv. No. 23-1012, ECF Docs. 17 & 26]. The proposed counterclaim

and third-party claim sought to rehash claims and counterclaims that were raised by the State Court Judgment, but also raised alter-ego claims against Jaber and expanded the claims against C&O to include not only amounts allegedly due under the "promissory note"—which had been overruled by this Court in its Claim Allowance Order—but also claims for property damage at 1200 South Carrollton.  C&O filed a motion to strike the counterclaim, and opposed the motion for leave to assert a counterclaim and third-party claims.  [Adv. No. 23-1012, ECF Docs. 20 & 30].

At oral argument to resolve the Counterclaim Motion, Zitler attempted to characterize the proposed claims and counterclaims against C&O and Jaber as "post-petition" claims—unrelated to disputes between the parties related to the Lease of 1200 South Carrollton that had been litigated and resolved prepetition.  [No. 22-11179, ECF Doc. 170].  But it became clear to the Court that Zitler viewed the filing of the Nondischargeability Adversary by C&O as merely a vehicle through which he could continue to press claims that had already been determined on a final basis in the State Court Judgment and in this Court's Claim Allowance Order.  *See id.*  For those reasons, the Court denied Ngo's Counterclaim Motion.  [Adv. No. 23-1012, ECF Doc. 32; No. 22-11179, ECF Docs. 169 & 170].

### 2.  *C&O's motion to compel discovery*

Pursuant to this Court's Scheduling Order, the parties were to complete discovery by January 25, 2024.  C&O filed a motion to compel discovery on February 3, 2024, requesting an order (a) compelling Ngo to provide complete responses to certain discovery requests and (b) requiring Ngo and his counsel, Zitler, to pay sanctions in the form of attorneys' fees and expenses incurred by C&O in connection with the motion to compel (the "Motion To Compel").  [Adv. No. 23-1012, ECF Doc. 48].  The gist of the Motion To Compel demonstrated that, after

several meet-and-confers, Zitler agreed to produce documents responsive to discovery requests on certain dates and then failed to do so, causing prejudice to Plaintiff as trial deadlines approached. Zitler opposed the Motion To Compel, conceding that he had not produced documents as promised on January 25, 2024, but stating that the corporate representative of C&O "intentionally undermin[ed] morale" at a deposition in the case on January 25, thus "stopped the flow of ordinary office work, as well as having stirred up more important personal feelings." [Adv. No. 23-1012, ECF Doc. 53].[8] Zitler produced no responsive documents until January 30, 2024, and still deficiencies remained, requiring another meet-and-confer. [Adv. No. 23-1012, ECF Doc. 48]. C&O filed the Motion To Compel on February 3, 2024, as Zitler had produced no further documents responsive to two interrogatories and three requests for production. *See id.*

At an expedited hearing on the matter on February 7, 2024, the Court admitted into evidence C&O's Exhibits A, B, C, & D, each attached to the Motion To Compel. [Adv. No. 23-1012, ECF Doc. 48]. The Court granted the Motion To Compel, but continued the request for sanctions to March 6, 2024. [Adv. No. 23-1012, ECF Doc. 54]. The Court further ordered counsel for C&O to file invoices in support of an award of attorneys' fees by February 21, 2024, and ordered any responses to those invoices be filed by February 28, 2024. *Id.* C&O timely filed its invoices on February 21, 2024, as Exhibits A & B attached to the Steffes Affidavit. [Adv. No. 23-1012, ECF Doc. 61]. Zitler untimely filed an opposition to sanctions on March 1, 2024. [Adv. No. 23-1012, ECF Doc. 76].

---

[8] Zitler attached the affidavit of his wife and paralegal, who declared that Jaber was rude to her during a break at the deposition. She declared that, although Jaber's counsel advised him to cease his behavior, the exchange upset her as well as Zitler when she told him about it later. [Adv. No. 23-1012, ECF Doc. 53, Ex. A]. Jaber and his attorney dispute that account. [Adv. No. 23-1012, ECF Doc. 75, Exs. A & B].

At the hearing on March 6, 2024, the Court admitted the Steffes Affidavit and the attached exhibits into evidence.  [Adv. No. 23-1012, ECF Doc. 85].   The Court noted the untimeliness of the Zitler's opposition and, notwithstanding the untimeliness, considered the merits of the pleading.  *See id.*   The Court took the matter under advisement, *see id*., and addresses C&O's request below, *see infra* Subpart II.A.

3.   *Zitler's motion in limine and spoliation motion*

On December 5, 2023, Zitler filed a motion *in limine* (the "<u>First Motion in Limine</u>"), in which he continued to push his "two-judgment" argument—despite the fact that the Louisiana state court had made very clear that the State Court Judgment is a final judgment and not a bifurcated, interlocutory order, and despite the fact that this Court had already overruled the very same arguments in its Claim Allowance Order.  [Adv. No. 23-1012, ECF Doc. 35].[9]  Ten days later, Zitler filed a pleading on behalf of Ngo styled as a "motion for finding of spoliation of evidence by C&O," wherein he recited events occurring in 2022 in Louisiana state court and asked this Court to assess sanctions for alleged actions of counsel for C&O, the Clerk of Court in the Louisiana state court—and even the state court judge herself—in "withholding" access of the online state court docket from him (the "<u>Spoliation Motion</u>").  [Adv. No. 23-1012, ECF Doc. 36].  On December 19, 2024, Zitler filed into the record without leave of Court a "supplement to motion in limine," wherein he continued what this Court can only describe as a rant regarding his "two-judgment" theory.  [Adv. No. 23-1012, ECF Doc. 39].  Counsel for C&O was forced to respond to each of those rants.  [Adv. No. 23-1012, ECF Docs. 40 & 41].  This Court denied Zitler's First Motion in Limine as well as the Spoliation Motion.  [Adv. No. 23-1012, ECF Doc. 46].

---

[9]      Zitler also filed a copy of the First Motion in Limine improperly in Ngo's main bankruptcy case. [No. 22-11179, ECF Doc. 179].

*4.   Zitler's late-filed summary judgment motion*

The Court's Scheduling Order also required dispositive motions to be filed and properly served on or before February 9, 2024.  [Adv. No. 23-1012, ECF Doc. 16].  On February 20, 2024, Zitler filed a motion for leave to file a dispositive motion out of time ("Ngo's Motion for Late MSJ"), and contemporaneously and unilaterally filed a motion for summary judgment and statement of uncontested facts with exhibits into the record.  [Adv. No. 23-1012, ECF Docs. 60 & 63–65].  Zitler did not file a notice of hearing or file a request for expedited consideration of Ngo's Motion for Late MSJ.  In his motion, Zitler again cited the rude behavior of C&O's corporate representative at a deposition weeks earlier, *see supra* note 8, as the reason for his noncompliance with this Court's Scheduling Order, [Adv. No. 23-1012, ECF Docs. 60].  C&O opposed the motion.  [Adv. No. 23-1012, ECF Docs. 62 & 75].  At a hearing on the matter on March 5, 2024, the Court denied Ngo's Motion for Late MSJ and ordered the Clerk of Court to strike the motion for summary judgment from the record.  [Adv. No. 23-1012, ECF Doc. 78].

*5.   Zitler's motion for leave to file late expert report*

This Court's Scheduling Order required Ngo as the defendant to deliver to C&O written reports of any expert he planned to call as a witness at trial on or before February 23, 2024.  [Adv. No. 23-1012, ECF Doc. 16].  On the day Ngo's expert report was due, Zitler filed a motion for leave of court to produce his expert report to C&O late, stating:  "The actual reasons for late filing have already been stated in prior filings, and have not changed.  The outrageousness of C&O's attempts to cut off evidence in this proceeding, and its reprehensible attacks on the home office of counsel, speak for themselves as just cause for regretful late filings."  [Adv. No. 23-1012, ECF Doc. 69].  C&O opposed the motion.  [Adv. No. 23-1012, ECF Doc. 70].  After an expedited hearing on the matter on March 5, 2024, the Court found no cause to grant an

extension of time to submit a late expert report and denied the request.  [Adv. No. 23-1012, ECF Doc. 78].

### 6.   *Zitler's second and third motions in limine and C&O's motion to dismiss*

On March 11, 2024, Zitler filed two more motions *in limine* seeking to "recognize *in limine* the legal defense of offset by unpaid Promissory Note," and to "recognize the defense of offset for indemnification by C&O under [the Lease]."  [Adv. No. 23-1012, ECF Docs. 91 & 92]. Zitler failed to file a certificate of service or notice of hearing for either motion.

On March 12, 2024, C&O filed a motion to dismiss the Nondischargeability Adversary, citing the "excessive litigation costs it has been forced to incur . . . as the result of unnecessary and unsupported filings and actions of the Debtor and his counsel."  [Adv. No. 23-1012, ECF Doc. 93].  C&O further acknowledged "a new level of unprofessionalism displayed by Debtor's counsel" directed toward counsel for C&O as well as counsel for the chapter 7 trustee appointed to administer the debtor's case.[10]   After notice and hearing, on March 18, 2024, the Court

---

[10]     Attached as an exhibit to the Motion To Dismiss was a sample e-mail received by counsel for C&O and the chapter 7 trustee from Zitler containing what could be described as condescending, unprofessional, unnecessary, and bizarre language purportedly sent to negotiate stipulations of fact in preparation for trial, while "reserv[ing] the right to last minute revisions just before the due date."  [Adv. No. 23-1012, ECF Doc. 93-1].  Excerpts include:

Let me suggest you join me in pretending respect for one another!

. . . [Counsel], if you approach this task with the same level of scrutiny as your review below, we should be *almost* done. . . .  Insofar as we have a tight leash starting now for Pre-Trial Order, **PLEASE BE ADVISED** neither Jeanne nor I will respond to such picayune points, except perhaps with words such a "***too picayune at this time***", depending on our mood . . . .

. . . Same for you [Counsel].  No reason in the world Trustee's paw gets under the T&M tent on tenant identity.  Just put executed AOS in my inbox ASAP and your job is over. As to 801 Marlene Dr. you've got some 'splainin' to do.  Did the Jan 10 hearing transcript (first 30 pages or so).  Pour a stiff drink, and be penitent:  whatever explanation, apology, retraction, abject grovel, point a finger, bad advice, bad 'shrooms, anything you deem fit and proper.  Monday noon my inbox,.. I really do like you.  But man, no one will dig what you done to Ms. Rose.  The Force is Not with you.  I really do not want to harsh your gig, but I will if you don't feed me remorse.  Cats in your gen

granted C&O's motion to dismiss the Nondischargeability Adversary voluntarily, but retained jurisdiction to resolve pending sanctions motions at an evidentiary hearing on March 25, 2024. [Adv. No. 23-1012, ECF Doc. 102].

>    7.  *Zitler's meandering motion to reconsider this Court's Orders entered in the Nondischargeability Adversary*

On March 25, 2024, approximately thirty minutes prior to the start of the scheduled evidentiary hearing to resolve pending sanctions motions, Zitler filed an incoherent motion styled as an "Omnibus FRCP 60(b) Motion To Reconsider." [Adv. No. 23-1012, ECF Doc. 116]. He failed to serve the motion or notice it for hearing properly for weeks. [Adv. No. 23-1012, ECF Docs. 118, 122 & 127]. On June 4, 2024, Zitler filed a pleading he styled as a "*Supplemental Memorandum in Support of Ngo's Omnibus Motion for Reconsideration and Opposition to Sanctions: The Phoenix Brief.*" [Adv. 23-1012, ECF Doc. 132]. That 23-page brief attempted to clarify the relief sought by Zitler on behalf of his client. After pontificating for 22 pages on the Full Faith and Credit Clause of the U.S. Constitution and continuing to press his "two-judgment" theory of the dispute between Ngo and C&O, Zitler sought the following relief:

>    **SET ASIDE AND VACATE** the Order [USBC Case No. 23-1012; R. Doc. 32] granting C&O's motion to strike Ngo's counterclaim and third-party claim;

---

never got the Watergate vibe. At every college in the '70s; ok, Berkeley moreso. "It aint the crime that you do wrong; it's the cover-up." Grok that! Deep down to the soul, you jive turkey! I practice law because I actually need truth and justice to prevail. You white-shoe cats don't get it, but no bull; it's a 1st Gen son of Holocaust Survivor thing. Fess' Estate wasn't as hairy as the crap I've seen in this case, Slip me contrite paper to wipe your lily white bony ass for you, or not. I earned by Karma, that's the courtesy in my practice. Whatever you choose to do is up to you. But spread the Word: Its gonna cost someone half the price, in legal tender, plus the vig. And No Groove to wasting a nano more of my pre-trial time!

*Id.*

**GRANT** Ngo's motion for Leave of Court to file counterclaim [USBC Case No.: 23-01012, R. Doc. 17], effective the date filed [filed October 16, 2023], with the proviso that the contractual indemnification counterclaim arises pre-petition, and that the amount sought is the amount recovered, $2.4M by recent authority clarifying applicable law, (La. May 10, 2024);

**SET ASIDE AND VACATE** the Order granting C&O's motion to strike Ngo's Motion for Leave of Court to file Summary Judgment Motion [USBC Case No.: 23-01012; R. Doc. 78], as the trial date and timeliness rationale is now made inoperative by C&O's ex parte withdrawal of its adversarial claims;

**GRANT** Ngo's Motion for Leave of Court to file Summary Judgment Motion [USBC Case No.: 23-1012; R. Doc. 60], effective of the date filed with the proviso that the Promissory Note counterclaim arises pre-petition, and that the amount sought is the amount recovered, $2.4M by recent authority clarifying applicable law.

**SET ASIDE** the Order entered January 12, 2024 [Adv. No. 23-1012, ECF Doc. 46] *Denying Ngo's:*

> (i) *Motion for Stay Violations,*
>
> (ii) *Motion in Limine,*
>
> (iii) *Motion to Disqualify Counsel,*
>
> (iv) *Motion for Sanctions, and*
>
> (v) *Motion for Finding Spoliation*

[Adv. No. 23-1012, ECF Doc. 132] (emphasis in original) (with ECF Doc. 116, the "Rule 60 Phoenix Motion"). In other words, Zitler asked the Court to unwind every substantive ruling made in the Nondischargeability Adversary—a case that had already been voluntarily dismissed by C&O after a cost-benefit analysis accounting for Zitler's litigious antics.

What the Rule 60 Phoenix Motion did **not** do was make any attempt to articulate a cohesive argument under Rule 60. C&O opposed the Rule 60 Phoenix Motion and Zitler filed a two-page response. [Adv. No. 23-1012, ECF Docs. 133 & 140]. On July 25, 2024, this Court issued an Order denying the Rule 60 Phoenix Motion for failure to satisfy the burden required by Rule 60. [Adv. No. 23-1012, ECF Doc. 144]. On August 6, Zitler filed a "motion for additional

findings of fact" again arguing his two-judgment theory. [Adv. No. 23-1012, ECF Doc. 147]. Zitler did not set that motion for hearing and the motion was inappropriate for *ex parte* consideration; thus, the Court entered an Order on August 7, 2024 denying the motion. [Adv. No. 23-1012, ECF Doc. 149].

Zitler appealed the Court's Orders denying the Rule 60 Phoenix Motion and his motion for additional findings of fact. [Adv. No. 23-1012, ECF Doc. 151]. On January 3, 2025, the District Court entered an Order and Reasons and a Judgment affirming this Court's Orders denying Zitler's motions. [Adv. No. 23-1012, ECF Docs. 160 & 161].

**D.    Zitler's Pleadings in Ngo's Main Bankruptcy Case Are Equally Vexatious.**

*1. The chapter 7 trustee's motion to abandon*

After the Court's Claim Allowance Order became final, the chapter 7 trustee filed a motion in Ngo's main bankruptcy case on October 10, 2023, that indicated to the Court that Zitler was unwilling to accept this Court's final ruling. [No. 22-11179, ECF Doc. 143]. After detailing the procedural history regarding the final State Court Judgment and this Court's final Claim Allowance Order, the chapter 7 trustee stated:

> Debtor contends that he has certain defenses which can be urged on appeal in the State Court Litigation and that he may also have claims (including without limitation a counterclaim) against C&O and/or its principal Mr. Nadal Jabar. C&O and Mr. Jabar dispute that Debtor has any existing appeal rights and/or counterclaims.

> By this Motion, the Trustee seeks to abandon: (i) any rights or claims of the estate in the State Court Litigation, (ii) any existing appeal rights or claims of the estate relating to the State Court Litigation, and (iii) any rights or claims of the estate (whether by counterclaim or otherwise) against C&O and/or Mr. Jabar . . . .

> . . . .

> The Trustee has reviewed the applicable state court pleadings, the documentation supplied by the parties, and state court ruling related to the Debtor C&O Claims. The Trustee has determined that the Debtor C&O Claims are of inconsequential value and benefit to the estate. . . .

(the "Motion To Abandon"), [No. 22-11179, ECF Doc. 143, ¶¶ 6–7 & 9].

C&O opposed the Motion To Abandon. [No. 22-11179, ECF doc. 149]. Citing the finality of both the State Court Judgment and this Court's Claim Allowance Order, C&O asserted that the claims the chapter 7 trustee sought to abandon did not exist and thus cannot constitute property of the estate which can be abandoned. *See id*. At a hearing on the matter on November 15, 2023, the Court agreed and denied the chapter 7 trustee's Motion To Abandon. [No. 22-11179, ECF Docs. 169 & 170].

> 2. *Zitler amends Ngo's Schedule A/B and files a motion to lift the automatic stay to litigate in state court.*

On October 16, 2023, a few days after the chapter 7 trustee filed the Motion To Abandon, Zitler filed an amended Schedule A/B without leave on behalf of Ngo to include a cause of action against C&O as an asset of the estate.[11] [No. 22-11179, ECF Doc. 148]. On October 18, 2023, Zitler filed a "motion for further lift of stay in state court." [No. 22-11179, ECF Docs. 150 & 155]. That motion requested this Court to lift the automatic stay so that Ngo could (1) intervene in a media outfit's lawsuit pending in state court to unseal the state court record in C&O's action against Ngo (which had already been resolved on a final basis), (2) intervene in a separate lawsuit filed by C&O against a related third party (restaurant Pho Bistreaux) to assert his own claims against C&O, and (3) to assert a writ of mandamus against the Louisiana state court that issued the State Court Judgment ("Ngo's Lift-Stay Motion"). *See id*. C&O opposed that motion. [No. 22-11179, ECF Doc. 159]. The day before the hearing on the matter, Zitler

---

[11]     *Compare* [No. 22-11179, ECF Doc. 42, ¶ 34] (listing "3rd Party demand against Nibal Jaber individually, as sole member of Carrollton & Oak LLC" in an "unknown" amount on Schedule A/B filed by Baralt), *with* [No. 22-11179, ECF Doc. 148, ¶ 34] (listing "Counterclaim against C&O, LLC & 3rd P. claim against Nidal Jabar, in solido, inchoate until Case #23-01012 'A'; unpaid Prom. Note (see attached)" in the amount of $10,196,293.79 on Schedule A/B filed by Zitler).

again, without leave, amended Ngo's Schedule A/B to list "Pho Bistreaux Restaurant equipment 'as is, where is'" valued at $20,000 as an asset of the estate for the first time.  [No. 22-11179, ECF Doc. 166, ¶ 40].  The Court held a hearing on November 15, 2023, and denied Ngo's Lift-Stay Motion.  [No. 22-11179, ECF Docs. 169 & 170].[12]

> ### 3. *Zitler filed a motion for sanctions against C&O and Jaber for violation of the automatic stay*

On December 8, 2023, Zitler filed on behalf of Ngo a motion seeking a finding "by the trustee, or alternatively by the court" that C&O and Jaber had violated the automatic stay in effect in Ngo's bankruptcy case by (1) seeking sanctions in the state court action against Ngo's former counsel for actions taken in that case and (2) prosecuting its claims in the state court action against Ngo's non-debtor co-defendants and third-party insurers.  [No. 22-11179, ECF Doc. 173].  Zitler sought sanctions from C&O and Jaber for those alleged stay violations.  *See id.*[13]  C&O opposed the motion.  [No. 22-11179, ECF Doc. 196].  Zitler filed a reply brief.  [No. 22-11179, ECF Doc. 206].  The Court held a hearing on the matter on January 10, 2024, where it became clear to the Court that Zitler had little understanding of the scope and application of § 362(a) of the Bankruptcy Code; the Court denied the motion for sanctions.  [No. 22-11179, ECF Doc. 221].

> ### 4. *The chapter 7 trustee filed a motion to sell property of the estate and Zitler immediately moves to disqualify counsel for the chapter 7 trustee*

At approximately 12:30 p.m. on December 19, 2023, the chapter 7 trustee filed a motion proposing the sale of fifteen developed and undeveloped estate properties (the "Properties"),

---

[12]     Any prepetition claims that could be asserted by Ngo constitute property of the estate and can only be asserted by the chapter 7 trustee.  Further, the Court lacks authority to grant a writ of mandamus to compel a state court to act.

[13]     Zitler also demanded sanctions against C&O and Jaber related to motions they did not file in the state court action.  [No. 22-11179, ECF Doc. 173, at 3–4].

including Ngo's residence at 801 Marlene Drive and 1200 South Carrollton Avenue (the "Sale Motion"). [ECF Doc. 22-11179, ECF Doc. 181]. Recognizing that the judicial lien and allowed secured claim held by C&O in the principal amount of $6,455,889.19 rendered C&O "vastly undersecured" given the market values of the Properties, the chapter 7 trustee negotiated a deal whereby C&O would purchase the Properties with a combination of (i) credit-bids under § 362(k) of the Bankruptcy Code and (ii) cash sufficient to pay all superior encumbrances existing on the properties, all outstanding real estate taxes, and Ngo's homestead exemption. *See* *id*.[14] The deal between the chapter 7 trustee and C&O also included a "carve-out" whereby C&O would share a portion of the proceeds from the sale of its collateral to pay administrative expenses incurred by the estate. *See id*.

At approximately 8:00 p.m. the same day, Zitler filed a motion on behalf of Ngo to disqualify counsel for the chapter 7 trustee (the "Motion To Disqualify"). [No. 22-11179, ECF Doc. 185]. Although Zitler filed the motion in Ngo's main bankruptcy case, he moved on behalf of Ngo

> to disqualify current counsel in the adversarial proceeding [C&O's Nondischargeability Adversary], as presently unable ". . . to represent or assist the trustee in carrying out the trustee's duties . . ." pursuant to 11 U.S. Code § 327(a), on the ground of lack of subject-matter expertise in, or at the very least lack of familiarity with, the substantive non-bankruptcy law applicable to the gravamen of Defendant's defenses in the adversarial proceeding.

*Id*. Ignoring this Court's final Order of April 24, 2023, approving the law firm of Chaffe McCall as counsel for the chapter 7 trustee with no objections, [No. 22-11179, ECF Doc. 85], and failing

---

[14] C&O's deficiency claim represents the estate's only general unsecured debt. As of the date of the Sale Motion, Matrix Financial Services Corp. c/o Flagstar Bank, FSB held a first-position mortgage on Ngo's residence at 801 Marlene Drive in the amount of $57,876.67. [No. 22-11179, ECF Doc. 181]; Proof of Claim No. 1. Also as of the date of the Sale Motion, BMC 1200 Carrollton, LLC held a first-position mortgage on 1200 South Carrollton Avenue in the amount of $456,317.07. [No. 22-11179, ECF Doc. 181]; Proof of Claim No. 3 (transferred from Gulf Coast Bank & Trust Co. to BMC 1200 Carrollton, LLC on June 22, 2023).

to understand that the chapter 7 trustee is not a party to the Nonchargeability Adversary initiated by C&O, the gist of Zitler's argument to disqualify counsel rested in his assertion that counsel did not comprehend the legal underpinnings of Ngo's claim and counterclaims related to the Lease—which had already been resolved by this Court. Again, Zitler pressed a "two-judgment" theory on the merits of the dispute between Ngo and C&O, but, turning to the chapter 7 trustee's Sale Motion in the main case, also asserted that counsel should be disqualified because "the trustee must still liquidate Ngo's real estate at the highest price the properties will fetch within a 3-month exposure." [No. 22-11179, ECF Doc. 185]. Finally, referencing the chapter 7 trustee's Motion To Abandon, *see supra* Subpart I.D.1, Zitler complained that counsel for the chapter 7 trustee refused to prosecute Ngo's claims and counterclaims against C&O and offered his own legal services to the chapter 7 trustee under § 327(e) of the Bankruptcy Code to prosecute those claim on behalf of the estate. *See id*.

The Court held a hearing on January 10, 2024 to consider the chapter 7 trustee's Sale Motion and the Motion To Disqualify. The chapter 7 trustee opposed Zitler's motion to disqualify, and Zitler filed a response. [No. 22-11179, ECF Docs. 202 & 209]. At the hearing, Zitler revealed that his basis for filing the Motion To Disqualify was rooted in arguments made by counsel for the chapter 7 trustee in open court which Zitler interpreted as "advising" the Court on legal issues. The Court denied the Motion To Disqualify counsel as without merit. [No. 22-11179, ECF Docs. 219 & 221].

Zitler filed an opposition to the chapter 7 trustee's Sale Motion on behalf of Ngo, asserting that (i) the trustee failed to market the properties adequately, (ii) C&O had no right to credit-bid up to the amount of its allowed claim and must pay any purchase price for any property in cash, and (iii) one or more Properties were co-owned and not owned 100% by Ngo

and thus could not be sold free and clear by the chapter 7 trustee. [No. 22-11179, ECF Doc. 200].[15] With leave of Court, C&O filed a response to Ngo's opposition to the Sale Motion. [No. 22-11179, ECF Docs. 212 & 213].

At the hearing, the Court accepted the chapter 7 trustee's representation that, given the lack of equity in any of the Properties in light of C&O's allowed proof of claim in excess of the principal amount of $6.5 million and the right of C&O to credit-bid its allowed claim under § 363(k) of the Bankruptcy Code, a private sale for amounts listed in an appraisal for 1200 South Carrollton (which factored a 6- to 12-month market exposure period) and broker price opinions for other Properties obtained by the trustee was more appropriate than expending time and resources to market all of the Properties publicly. Counsel for the chapter 7 trustee also represented that he relied on the sworn statements made in Ngo's schedules that Ngo owned 100% of each of the Properties, on counsel's own review of public records for each Property, and the rights and requirements of §§ 363(f) and (h) of the Bankruptcy Code as bases for the Sale Motion. Finding that, as a chapter 7 debtor in a non-surplus bankruptcy case, Ngo had no standing to object to the proposed sale and finding that the chapter 7 trustee satisfied her burden under § 363(f) of the Bankruptcy Code, the Court granted the Sale Motion (the "Sale Order"). [No. 22-11179, ECF Docs. 219, 223 & 226].[16]

Zitler filed no motion to reconsider or notice of appeal on behalf of Ngo or any other client challenging the Court's Sale Order and that Order became final.

---

[15]    Ngo's opposition did not specifically identify which of the fifteen properties he believed were co-owned with another person or entity; at the hearing, Zitler likewise failed to identify specifically any co-owned property. [No. 22-11179, ECF Docs. 200 & 226].

[16]    At the hearing, Zitler asserted his "two-judgment" theory and argued that the bankruptcy case could be a "surplus" case when and if Ngo's claims and counterclaims against C&O under the Lease were liquidated. The Court rejected that argument. [No. 22-11179, ECF Doc. 226].

5.     *C&O's motion to compel examination of the debtor and related parties pursuant to Bankruptcy Rule 2004*

On December 21, 2023, after failing to obtain consent for examinations, C&O filed a motion to compel a Rule 2004 examination of Ngo, his wife, Rose Nguyen, and a corporate representative of T&M Ngo, LLC to ascertain the estate's interest in T&M Ngo, LLC (the "Rule 2004 Motion").  [No. 22-11179, ECF Doc. 190].  Zitler opposed the Rule 2004 Motion, stating that granting the request would give "C&O free discovery in the midst of the accompanying adversarial proceeding" (referring to C&O's Nondischargeability Adversary).  [No. 22-11179, ECF Doc. 201].  Finding that the subject matter of the Rule 2004 Motion did not overlap with the claims in C&O's Nondischargeability Adversary, the Court granted the Rule 2004 Motion on January 16, 2024.  [No. 22-11179, ECF Doc. 224].

On February 2, 2024, the chapter 7 trustee filed a motion to sell the estate's interest in T&M Ngo, LLC to C&O for a combination of a credit-bid under § 363(k) of the Bankruptcy Code and $10,000 in cash.  [No. 22-11179, ECF Doc. 237].  The chapter 7 trustee properly served the motion, and noticed the hearing on the matter for February 28, 2024.  With no objections to the motion filed, the Court granted the chapter 7 trustee's motion on March 1, 2024.  [No. 22-11179, ECF Doc. 246].

**E.     Despite the Court's Final Sale Order, the Trustee Filed an Adversary Proceeding Pursuant to § 363(h) of the Bankruptcy Code and Bankruptcy Rule 7001(3) To Obtain Approval To Sell Ngo's Residence.**

After this Court converted Ngo's chapter 13 bankruptcy case to one under chapter 7, then-counsel Baralt filed Ngo's sworn Schedules into the record.  On his Schedules, Ngo (i) claimed the full state homestead exemption for his residence located at 801 Marlene Drive, Gretna, Louisiana; (ii) identified Rose Nguyen as a "spouse, former spouse, or legal equivalent" who lived with him in Louisiana, a community property state, within the eight years prior to

23

filing for bankruptcy protection; and (iii) identified 801 Marlene Drive as her address. [No. 22-11179, ECF Docs. 43 (Sch. C) & 47 (Sch. H)].

According to the chapter 7 trustee, shortly after entry of this Court's Sale Order authorizing the sale of 801 Marlene Drive among fourteen other properties, Zitler, on behalf of Ngo and Rose Nguyen

> began to assert that the 801 Marlene Property was not community property, but was instead co-owned property between the Debtor and Rose because (i) the Debtor had divorced Rose in the year 2000 prior to them acquiring the 801 Marlene Property, and (ii) Rose was at the time of the acquisition, married to Defendant [Ngo Vinh] Loi, living under a Vietnamese community property regime.
>
> . . . .
>
> After counsel for the Trustee had further conversations with counsel for C&O (the purchaser under the Sale Order and the only unsecured creditor in this case), C&O agreed not to seek to enforce the sale of the 801 Marlene Property pursuant to the Sale Order and to allow the Trustee to treat Rose as a co-owner of the 801 Marlene Property as long as all of the other consequences that follow from her co-ownership interest in a bankruptcy case are recognized, including without limitation, that (i) no homestead exemption would be claimed or allowed because Louisiana law does not permit the claiming of a homestead exemption in co-owned property, and (ii) the Trustee would move forward and seek authority to sell the full 100% interest in the 801 Marlene Property pursuant to the co-ownership sale provisions of the Bankruptcy Code . . . .

[Adv. No. 24-1004, ECF Doc. 1]. On March 26, 2024, the chapter 7 trustee initiated an adversary proceeding against Rose Nguyen and Ngo Vinh Loi pursuant to § 363(h) of the Bankruptcy Code and Bankruptcy Rule 7001(3) to obtain approval for the sale of both the interest of the estate and that of an alleged co-owner in the property located at 801 Marlene Drive. *See id.*

On March 26, 2004, Zitler appeared on behalf of Rose Nguyen and filed a motion for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. [Adv. No. 24-1004, ECF Docs. 5 & 13]. The chapter 7 trustee opposed the motion. [Adv. No. 24-1004, ECF

Doc. 14].  At a hearing to resolve the motion on June 12, 2024, this Court denied the motion, but

*sua sponte* found that

> an actual conflict exists between Tommy Ngo, the debtor in the above-captioned main bankruptcy case, and Rose Nguyen regarding the character of the property at issue under Louisiana state law and its disposition.  Pursuant to Rule 1.7 of the Louisiana Rules of Professional Conduct, Justin A. Zitler is **PROHIBITED** from further representation of Rose Nguyen in this adversary proceeding due to the actual conflict of interest.

[Adv. No. 24-1004, ECF Doc. 15].  On June 28, 2024, the Cao Law Firm, P.C. substituted for

Zitler as counsel for Rose Nguyen.  [Adv. No. 24-1004, ECF Docs. 17 & 19].  The chapter 7

trustee and Nguyen quickly reached a settlement that allowed the 801 Marlene Drive property to

be sold pursuant to § 363(h) of the Bankruptcy Code.  [Adv. No. 24-1004, ECF Docs. 36 & 37].

### F.    Almost a Year After Issuance of the Court's Order Denying the Chapter 7 Trustee's Motion To Abandon, Zitler Files a Motion To Reconsider that Final Order.

On November 15, 2023, this Court entered an Order denying the chapter 7 trustee's

Motion To Abandon claims and counterclaims that Zitler asserted were valuable estate assets.

*See supra* Subpart I.D.1; [No. 22-11179, ECF Doc. 169].  In light of the fact that Ngo's claims

and counterclaims had been resolved on a final basis by the State Court Judgment and this

Court's final Claim Allowance Order, this Court found that the claims and counterclaims no

longer existed and thus could not be abandoned.  Zitler did not appeal that Order and it became a

final Order.

On October 8, 2024, Zitler filed on behalf of Ngo a motion to reconsider that ruling under

Rule 60 of the Federal Rules of Civil Procedure, made applicable to these proceedings by

Bankruptcy Rule 9024.  [No. 22-11179, ECF Doc. 288].  Zitler asserted that counsel for the

chapter 7 trustee committed fraud on the Court by representing that he and the chapter 7 trustee

examined "the state court record" to determine that Ngo's claims and counterclaims were of

inconsequential value to the estate.  *See id*.  Thus, Zitler asked this Court to reconsider its final ruling based upon "fraud . . ., misrepresentation, or misconduct by an opposing party" under Rule 60(b)(3).

The chapter 7 trustee filed a response, attaching e-mails, evidencing the fact that Zitler knew that the chapter 7 trustee had been supplied with the state court record well in advance of the filing of the motion to abandon.  [No. 22-11179, ECF Doc. 299, Exs. A–C].  C&O also filed a response, asserting that Zitler had not satisfied the requirements of Rule 60 to justify reconsideration.  [No. 22-11179, ECF Doc. 300].  Zitler filed a reply brief on behalf of Ngo, asserting that certain claims against C&O had survived the State Court Judgment.  [No. 22-11179, ECF Doc. 302].  The Court viewed Zitler's motion to reconsider that ruling as an end-run around a timely appeal of the denial of the Motion To Abandon and denied the motion to reconsider that ruling.  [No. 22-11179, ECF Doc. 310].  In that Order, the Court explained:

> Although Debtor's counsel alleged fraud as a basis for this Court to reconsider its ruling under Rule 60(b) of the Federal Rules of Civil Procedure, he presented no evidence that could not have been obtained at the time the Court considered the trustee's motion to abandon.  Indeed, it appears that, a year later, Debtor's counsel merely continues to be unhappy or dissatisfied with the ruling of this Court.

*Id*.[17]

---

[17]    The Court continued:

> For the reasons stated on the record, and given the record in this case as well as in Adversary Proceeding No. 23-1012, *Carrollton & Oak, LLC v. Ngo* and Adversary Proceeding No. 24-1004, *Trustee v. Nguyen*, the Court finds that counsel for the Debtor, Justin A. Zitler, has crossed well over the line as a zealous advocate for his client and has continued to file repetitive and untimely vexatious pleadings, asking the Court to reconsider its rulings made final many months ago and revisit issues that have been resolved and are law of the case.  Other parties in interest are then forced to spend time and resources again and again to respond to such frivolous motions and to rehash long-decided matters.
>
> Flagrant abuse of the judicial process can enable one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.  *See Clovis Green v. Carlson*, 649 F.2d 285, 287 (5th Cir. 1981). Federal courts

## II. FINDINGS OF FACT[18]

Before the Court are the following requests for sanctions filed by C&O:

### A.    Sanctions Associated with the Motion To Compel Discovery

As discussed *supra* Subpart I.C.2, the Court granted C&O's Motion To Compel discovery responses in the Nondischargeability Adversary for cause, but continued the portion of the Motion To Compel requesting sanctions to March 6, 2024. [Adv. No. 23-1012, ECF Doc. 54]. The Court ordered counsel for C&O to file invoices in support of an award of attorneys'

---

may refuse to entertain certain complaints or otherwise impose restrictions if a petitioner "flagrant[ly] misuse[s]" or abuses the judicial process. *Howard v. King*, 707 F.2d 215, 221 (5th Cir. 1983). This Court may impose onerous conditions "as long as they are designed to assist the . . . court in curbing the particular abusive behavior involved" and do not "deny a litigant meaningful access to the courts." *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986). Therefore,

. . . .

**IT IS ORDERED** that attorney Justin A. Zitler's Case Management/Electronic Case Filing System privileges are **REVOKED** until further Order of this Court for all matters before the United States Bankruptcy Court, Eastern District of Louisiana.

**IT IS FURTHER ORDERED** that attorney Justin A. Zitler must deliver pleadings prepared by him on behalf of any client IN PERSON to the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Louisiana, 500 Poydras Street, Suite B-601, New Orleans, Louisiana, 70130. Before the Clerk's Office can accept his pleadings, this Court will conduct a review of the pleadings to ensure that the pleading contains a colorable request for relief. If the Court decides that a pleading contains a colorable request for relief, only then will the Clerk of Court be permitted to accept the pleading and file it into the record. At that time, the Clerk of Court will notify Mr. Zitler that his pleading has been filed into the record in any given case and he will be required to serve and notice that pleading pursuant to the Federal Rules of Bankruptcy Procedure and this Court's Local Rules and file a Certificate of Service and Notice of Hearing in person with the Clerk of Court.

**IT IS FURTHER ORDERED** that this Court will revisit the issue of Mr. Zitler's Case Management/Electronics Case Filing System privileges and consider reinstatement of those privileges on Tuesday, December 1, 2026. . . .

[No. 22-11179, ECF Doc. 310].

[18]    These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 and 9014. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

fees by February 21, 2024, and ordered any responses to be filed by February 28, 2024.  *See id.*

C&O timely filed its invoices on February 21, 2024, as exhibits attached to the Steffes Affidavit.

[Adv. No. 23-1012, ECF Doc. 61].  Zitler untimely filed an opposition to sanctions on March 1,

2024, asserting that, despite his promise to produce documents on a certain date and time, his

noncompliance with discovery requests was justified because the majority of the documents

requested had been revealed in state court litigation or in the McGovern bankruptcy.[19]  [Adv. No.

23-1012, ECF Doc. 76].  Zitler further asserted that "[a]ny discrepancy of a page here or there,

whether inadvertent or mischievous, is resolved by the joint exhibit book endeavor envisioned in

the pre-trial notice, not by time-wasting discovery pedanticism."  *Id*.  In other words, Zitler's

strategy was to wait until the eve of trial and then reveal the evidence that he intended to use at

trial, which runs counter to due process, rules of civil procedure, and this Court's Scheduling

Order.  At the hearing on March 6, 2024, the Court admitted the Steffes Affidavit and the

attached exhibits into evidence.  [Adv. No. 23-1012, ECF Doc. 85].

C&O requests **$6,729.00** in fees for services provided by The Steffes Law Firm and

**$4,200.00** in fees for services provided by the law firm of Bagneris, Pieksen & Associates, LLC

associated with the filing and prosecution of the Motion To Compel.  The Court has reviewed

every time entry listed in the invoices attached to the Steffes Affidavit and finds the services, the

time spent on those services, and the hourly rates of the attorneys providing the services to be

reasonable in the context of filing and prosecuting the Motion To Compel.

### B.   C&O's First Motion for Sanctions

On December 12, 2023, C&O filed a motion seeking sanctions pursuant to this Court's

inherent authority and 11 U.S.C. § 105(a) against Ngo and Zitler for filing bad-faith and

---

[19]     *See supra* note 5.

meritless pleadings (the "<u>First Sanctions Motion</u>").    [No. 22-11179, ECF Doc. 175].

Specifically, C&O asserted that the Counterclaim Motion in the Nondischargeability Adversary,

*see supra* Subpart I.C.1, and Ngo's Lift-Stay Motion in Ngo's main bankruptcy case, *see supra*

Subpart I.D.2, were frivolous filings considering the final rulings by the Louisiana state court

and this Court.   Zitler filed an opposition on behalf of Ngo, asserting that his filing of the

Counterclaim Motion and Ngo's Lift-Stay Motion—both filed months after this Court's Claim

Allowance Order became a final Order—was justified because "[h]ere on planet Earth, there are

two judgments, not one," referring to Zitler's refrain throughout this case that the State Court

Judgment is not a final judgment that resolved all claims between Ngo and C&O under the

Lease.  [No. 22-11179, ECF Doc. 199].[20]

On February 23, 2024, with leave of Court, C&O supplemented the First Sanctions

Motion, requesting additional sanctions against Ngo and Zitler for filing further meritless

---

[20]     According to Zitler in his opposition to the First Sanctions Motion:

> For C&O to seek sanctions against Ngo for embracing reality by rejecting C&O's
> *alternative facts* is a bridge too far. . . . .
>
> What appeared to Ngo counsel as C&O's inexplicable stubbornness in adhering
> to an "alternative fact" that only one May 23, 2022 judgment existed, must have appeared
> quite differently to trustee counsel and to the court.
>
> C&O executed their tactic of one judgment only so convincingly that Ngo's so-
> called "two-judgment theory" really was perceived ***not as certified fact***, but gaslit by
> C&O as a "patently frivolous legal argument," made clear from transcripts October 18,
> 2023 and November 15, 2023, further ***gaslighting*** Ngo counsel's dilatory, vexatious, and
> harassing tactic by of "continued meritless litigation."  It's hard to characterize failure of
> certified facts to dispel ***gaslighting***; yet that is precisely the situation here.  Kafkaesque
> perhaps.
>
> C&O's secret sauce in its audacious "one judgment only: **the C&O Judgment**"
> strategy was to distract trustee and the court from taking a good look at the Ngo
> Judgment, revealing that Ngo's lease termination claim was denied ***without prejudice***
> under LCCP 1673.  That is not so great news for C&O, so they skillfully distracted folks
> from even looking at it until they could eit6her [*sic*] ram through a global sale on cre4dit
> [*sic*] bids without market exposure, or discredit undersigned counsel thoroughly.

[No. 22-11179, ECF Doc. 199] (emphasis in original).

pleadings, including the objection to the Sale Motion in the main bankruptcy case, *see supra* Subpart I.D.4, and Ngo's Motion for Late MSJ, *see supra* Subpart I.C.4.  [No. 22-111779, ECF Doc. 242].  C&O's supplement also requested sanctions for expenses incurred as a result of intentional delays associated with C&O's Rule 2004 Motion, *see supra* Subpart I.D.5. Specifically, C&O claims that Zitler's baseless refusal to consent to the Rule 2004 examination of his client, Ngo, caused C&O to incur fees and costs associated with filing the Rule 2004 Motion, and, after the Court granted the Rule 2004 Motion and the parties scheduled a date for the examination, C&O incurred additional fees and costs after Zitler and his client appeared over an hour late to the agreed-upon examination.  *See id*.  Zitler filed no response to C&O's supplement to the First Motion for Sanctions on behalf of himself or his client.

### C.     C&O's Second and Third Motions for Sanctions

On February 7, 2024, C&O filed a motion in the Nondischargeability Adversary seeking sanctions pursuant to Bankruptcy Rule 9011 (the "Second Motion for Sanctions") against Ngo and Zitler for filing of the First Motion in Limine, *see supra* Subpart I.C.3, asserting that the sole purpose of its filing was to cause unnecessary delay and increase litigation costs as the motion simply continued to push a "two-judgment" theory that had been rejected by state courts and this Court.  [Adv. No. 23-1012, ECF Doc. 55].  C&O attached to its Second Motion for Sanctions a letter dated December 20, 2023, to Zitler complying with the notice requirements of Rule 9011. *See id*.  C&O properly served the Second Motion for Sanctions and noticed it for hearing on February 28, 2024.  Zitler filed no response to the Second Motion for Sanctions on behalf of himself or his client.  The Court finds that the First Motion in Limine lacked a basis for filing and that Zitler filed the motion in bad faith, intending to harass other parties in the case, cause unnecessary delay, and needlessly increase litigation costs.

Also on February 7, 2024, C&O filed a motion in the Nondischargeability Adversary seeking sanctions pursuant to Bankruptcy Rule 9011 (the "Third Motion for Sanctions") against Ngo and Zitler for filing the Spoliation Motion, *see supra* Subpart I.C.3, asserting that the Spoliation Motion is not only utterly baseless on the merits, but also contains personal slights and attacks on the ethics of C&O's counsel.  [Adv. No. 23-1012, ECF Doc. 56].  C&O attached to its Third Motion for Sanctions a letter dated December 20, 2023, to Zitler complying with the notice requirements of Rule 9011.  *See id*.  C&O properly served the Third Motion for Sanctions and noticed it for hearing on February 28, 2024.  Zitler filed no response to the Third Motion for Sanctions on behalf of himself or his client.  The Court finds that the Spoliation Motion lacked a basis for filing and that Zitler filed the motion in bad faith, intending to harass other parties in the case, cause unnecessary delay, and needlessly increase litigation costs.

On March 1, 2024, this Court entered an Order setting an evidentiary hearing to resolve the First, Second, and Third Motions for Sanctions.  [No. 22-11179, ECF Doc. 247; Adv. No. 23-1012, ECF Doc. 74].  The Court instructed C&O to file invoices into the record in support of its motions on or before March 13, 2024, and instructed parties in interest to file responses addressing the reasonableness of the charges on those invoices on or before March 20, 2024.  [No. 22-11179, ECF Doc. 247; Adv. No. 23-1012, ECF Doc. 74].  On March 13, 2024, counsel for C&O filed an affidavit into the record (the "Second Steffes Affidavit") attaching as exhibits invoices in support of C&O's motions.  [No. 22-11179, ECF Doc. 253; Adv. No. 23-1012, ECF Doc. 99]; *see also* [No. 22-11179, ECF Doc. 261, Exs. P-1 & P-19].  At the evidentiary hearing on March 25, 2024, among other exhibits, the Court admitted into evidence C&O Exhibit P-1, which consisted of the Second Steffes Affidavit attaching invoices from The Steffes Law Firm as

well as those from the law firm of Bagneris, Pieksen & Associates, LLC listing services associated with the First, Second, and Third Motions for Sanctions.

In the First Motion for Sanctions, as supplemented, C&O requests **$20,341.09** in fees and **$980.62** in costs for services provided by The Steffes Law Firm and **$9,600.00** in fees for services provided by the law firm of Bagneris, Pieksen & Associates, LLC.  The Court has reviewed every time entry listed on the invoices attached as Exhibits A-1 and A-2 to the Second Steffes Affidavit and finds the services, the time spent on those services, the hourly rates of the attorneys providing the services, and costs incurred to be reasonable in the context of responding to the Counterclaim Motion, Ngo's Lift-Stay Motion, Ngo's objection to the Sale Motion, and Ngo's Motion for Late MSJ filing, and filing the First Motion for Sanctions as supplemented. [No. 22-11179, ECF Doc. 261, Ex. P-1].

In the Second Motion for Sanctions, C&O requests **$4,167.50** in fees for services provided by The Steffes Law Firm requests and **$768.00** in fees for services provided by the law firm of Bagneris, Pieksen & Associates, LLC.  The Court has reviewed every time entry listed on the invoices attached as Exhibits B-1 and B-2 to the Second Steffes Affidavit and finds the services, the time spent on those services, and the hourly rates of the attorneys providing the services to be reasonable in the context of responding to the First Motion in Limine and filing the Second Motion for Sanctions.  [No. 22-11179, ECF Doc. 261, Ex. P-1].

In the Third Motion for Sanctions, C&O requests **$5,087.83** in fees for services provided by The Steffes Law Firm and requests **$400.00** in fees for services provided by the law firm of Bagneris, Pieksen & Associates, LLC.  The Court has reviewed every time entry listed on the invoices attached as Exhibits C-1 and C-2 to the Second Steffes Affidavit and finds the services, the time spent on those services, and the hourly rates of the attorneys providing the services to be

32

reasonable in the context of responding to the Spoliation Motion and filing the Third Motion for Sanctions.  [No. 22-11179, ECF Doc. 261, Ex. P-1].

### D.    C&O's Fourth Motion for Sanctions

On May 2, 2024, C&O filed a motion in the Nondischargeability Adversary seeking sanctions pursuant to Bankruptcy Rule 9011 (the "Fourth Motion for Sanctions"), [Adv. No. 23-1012, ECF Doc. 130], against Ngo and Zitler for filing the Rule 60 Phoenix Motion, *see supra* Subpart I.C.7.  C&O attached to its Fourth Motion for Sanctions a letter dated April 10, 2024, to Zitler complying with the notice requirements of Rule 9011.  [Adv. No. 23-1012, ECF Doc. 130-1].  Counsel for C&O filed into the record an Affidavit in Support of Sanctions (the "Third Steffes Affidavit") and attached invoices from The Steffes Law Firm as well as from the law firm of Bagneris, Pieksen & Associates, LLC supporting the Fourth Motion for Sanction.  [Adv. No. 23-1012, ECF Doc. 164].  Zitler filed a response.  Rather than address the reasonableness of specific time entries on invoices attached to the Third Steffes Affidavit, Zitler continued to complain about the decisions of this Court rendered in Ngo's bankruptcy case and the Nondischargeability Adversary.  [Adv. No. 23-1012, ECF Doc. 165].  The Court finds that the Rule 60 Phoenix Motion lacked a basis for filing and that Zitler filed the motion in bad faith, intending to harass other parties in the case, cause unnecessary delay, and needlessly increase litigation costs.

C&O requests **$24,675.00** in fees and **$330.20** in costs for services provided by The Steffes Law Firm and **$4,720.80** for services provided by the law firm of Bagneris, Pieksen & Associates, LLC to respond to the frivolous Rule 60 Phoenix Motion in this Court and on appeal. The Court has reviewed every time entry listed on the invoices attached as Exhibits A and B to the Third Steffes Affidavit and finds the services, the time spent on those services, the hourly

rates of the attorneys providing the services, and costs incurred to be reasonable in the context of responding to the Rule 60 Phoenix Motion.  [No. 23-1012, ECF Doc. 164, Exs. A–B].

### III. CONCLUSIONS OF LAW

C&O seeks sanctions in the form of attorney's fees and costs against Ngo and Zitler pursuant to this Court's inherent power, 11 U.S.C. § 105(a), and Bankruptcy Rule 9011.

### A. The Court May Impose Sanctions Pursuant to Its Inherent Authority and 11 U.S.C. § 105(a).

"[I]t is firmly established that 'the power to punish for contempt is inherent in all courts.'"  *Skyport Global Commc'ns, Inc. v. Intelsat Corp. (In re Skyport Global Commc'ns, Inc.)*, 408 B.R. 687, 695 (Bankr. S.D. Tex. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citation omitted)).  Indeed, "[f]ederal courts have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets."  *Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017) (citations omitted); *see also In re Spectee Grp., Inc.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995) ("A Court has inherent authority to supervise and control its own proceedings, and to require the payment of the other party's attorney's fees by one who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986))).  Moreover,

> [t]his power reaches both conduct before the court and that beyond the court's confines, for "[t]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings.  Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."

*Chambers*, 501 U.S. at 44 (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987)).

Specifically, the Court has the power to assess attorneys' fees against both attorneys and

litigants who engage in abusive litigation practices or in bad-faith conduct. *See id.* at 45–46; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). A party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978). "[T]he 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power." *Chambers*, 501 U.S. at 45 (citing Hutto, 437 U.S. at 689). "Where the Court concludes 'that the very temple of justice has been defiled . . . [or when a party] shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order,' then the Court may invoke its inherent powers." *In re Skyport Global Commc'ns, Inc.*, 408 B.R. at 696 (quoting *Chambers*, 501 U.S. at 46). Although the Court's inherent powers are typically exercised when conduct is not subject to discipline under statutes or rules, "neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the [r]ules." *Chambers*, 501 U.S. at 50.

This Court also has a statutory grant of authority under § 105(a) of the Bankruptcy Code "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In addition to granting broad power to implement provisions of the Bankruptcy Code, § 105(a) "has been interpreted as supporting the inherent authority of the bankruptcy courts to impose civil sanctions for abuses of the bankruptcy process." *In re Carroll*, 850 F.3d at 816 (quoting *Walton v. LaBarge, Jr. (In re Clark)*, 223 F.3 859, 864 (8th Cir. 2000); *Friendly Fin. Discount Corp. v. Tucker (In re Tucker)*, No. 99-31069, 2000 WL 992448, at *3 (5th Cir. June 28, 2000)); *see also In re Tabor*, 583 B.R. 155, 177 (Bankr. N.D. Ill. 2018) (citing *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997)).

"The Fifth Circuit has held that the imposition of sanctions using § 105 as well as the inherent power of the Court must be accompanied by a specific finding of bad faith." *In re Bradley*, 495 B.R. 747, 793 (Bankr. S.D. Tex. 2013) (collecting cases); *see also In re Skyport Global Commc'ns, Inc.*, 408 B.R. at 695 (quoting *Chambers*, 501 U.S. at 45; *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999). "Once a court orders that a party must pay reasonable fees and expenses as a sanction, the lodestar analysis is then used to determine the proper amount of fees 'by multiplying the reasonable number of hours expended in defending the suit by the reasonable hourly rates for the participating lawyers.'" *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL NO. 2179, 2021 WL 4192060, at *2 (E.D. La. Sept. 15, 2021) (quoting *Skidmore Energy v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006)). "In determining the fee award, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Id*. (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

### B. This Court May Also Assess Sanctions Pursuant to Bankruptcy Rule 9011.

Federal Rule of Bankruptcy Procedure 9011 governs the signing and filing of documents with the Court. *See* FED. R. BANKR. P. 9011. Specifically, Rule 9011 provides:

> **(a) Signature.** Every petition, pleading, written motion, and other document— except a list, schedule, or statement, or an amendment to one of them—must be signed by at least one attorney of record in the attorney's individual name. A party not represented by an attorney must sign all documents. Each document must state the signer's address and telephone number, if any. The court must strike an unsigned document unless the omission is promptly corrected after being called to the attorney's or party's attention.

> **(b) Representations to the Court.** By presenting to the court a petition, pleading, written motion, or other document— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:

(1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;

(3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. BANKR. P. 9011(a)–(b)(1).  "If . . . the [C]ourt determines that [Rule 9011(b)] has been violated, the [C]ourt may . . . impose an appropriate sanction on any . . . party that committed the violation or is responsible for it."  FED. R. BANKR. P. 9011(c)(1).

"Under Rule 9011, the conduct of a signatory to a pleading or motion is assessed objectively."  *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, No. 14-34974, 2022 WL 677459, at *2 (Bankr. S.D. Tex. Mar. 7, 2022) (citing *Snow Ingredients, Inc. v. SnoWizard, Inc*., 833 F.3d 512, 528 (5th Cir. 2016)).  "A signatory violates Rule 9011(b)(2) by advancing claims or arguments lacking support in existing law, and for which no reasonable justification for extension of existing law if offered."  *See id*. (citations omitted).  Further, "[i]n the Rule 9011 context, claims barred by res judicata are generally claims that lack support in existing law."  *Id*. (citations omitted).

### C.   The Court Assesses Monetary Sanctions Against Zitler in Favor of C&O in the Total Amount of 82,000.84.

This Court is averse to assess sanctions against attorneys or their clients, but in this case, the Court is left without choice.  Dissatisfied with court rulings on the disputes between his client, Ngo, and C&O, Zitler has abused the judicial process by continuing to advance theories and press claims that are barred by res judicata.  As an officer of the court and a member of the

Louisiana bar, Zitler is held to a higher standard than his client, an individual chapter 7 debtor, to know the effects of a final Order.   Thus, the Court places responsibility for the vexatious litigation tactics and unprofessional behavior toward opposing counsel that the Court has observed in this matter squarely upon Zitler.

Based on the record in this bankruptcy case and the Nondischargeability Adversary and applicable law,

**IT IS ORDERED** that the remaining request for sanctions contained in the Motion To Compel is **GRANTED**;

**IT IS FURTHER ORDERED** that the First Motions for Sanctions is **GRANTED**;

**IT IS FURTHER ORDERED** that the unopposed Second Motion for Sanctions is **GRANTED**;

**IT IS FURTHER ORDERED** that the unopposed Third Motion for Sanctions is **GRANTED**;

**IT IS FURTHER ORDERED** that the unopposed Fourth Motion for Sanctions is **GRANTED**;

**IT IS FURTHER ORDERED** that monetary sanctions are assessed against Justin A. Zitler in the total amount of **$82,000.84** as follows:

| Motion | Steffes Firm Fees | Steffes Firm Costs | Bagneris Firm Fees | Total |
|--------|------------------|--------------------|--------------------|-------|
| Motion to Compel | $6,729.00 | $0.00 | $4,200.00 | $10,929.00 |
| First Motion for Sanctions | $20,341.09 | $980.62 | $9,600.00 | $30,921.71 |
| Second Motion for Sanctions | $4,167.50 | $0.00 | $768.00 | $4,935.50 |
| Third Motion for Sanctions | $5,087.83 | $0.00 | $400.00 | $5,487.83 |
| Fourth Motion for Sanctions | $24,675.00 | $330.20 | $4,720.80 | $29,726.00 |
| **Total** | **$61,000.42** | **$1,310.82** | **$19,688.80** | **$82,000.84** |

**IT IS FURTHER ORDERED** that the monetary sanctions shall be payable to C&O within sixty (60) days of this Order by mailing via commercial carrier or hand-delivering certified funds to C&O's counsel as follows:

    a. Certified funds in the amount of **$62,311.24** shall be remitted to The Steffes Law Firm, c/o William E. Steffes, 13702 Coursey Blvd., Bldg. 3, Baton Rouge, LA 70813; and

    b. Certified funds in the amount of **$19,688.80** shall be remitted to the law firm of Bagneris, Pieksen & Associates, LLC, c/o Michael Bagneris, 935 Gravier Street, Suite 2110, New Orleans, LA 70112.

**IT IS FURTHER ORDERED** that the Court will hold an **IN PERSON** hearing on **Tuesday, May 13, 2025, at 1:30 p.m.** at the United States Bankruptcy Court, 500 Poydras Street, Courtroom B-709, New Orleans, Louisiana 70130 to assess compliance with this Order and, in the event of non-compliance, to assess whether additional action should be taken by the Court to ensure compliance with this Order.

**IT IS FURTHER ORDERED** that counsel for Carrollton & Oak, LLC shall serve this *Memorandum Opinion and Order* via first-class U.S. Mail on all parties not receiving electronic notice via this Court's CM/ECF system and on Justin A. Zitler via certified mail at the address below and file a Certificate of Service within three days.

Justin A. Zitler Law Office
4819 Constance St.
New Orleans, LA  70115

New Orleans, Louisiana, this 5th day of February, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE
